1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                         DISTRICT OF OREGON

9                         PORTLAND DIVISION

10

11 KATHY JEAN HAMILTON,                    )
                                           )
12                Plaintiff,               )    03:11-cv-06063-HU
                                           )
13      vs.                                )    **FINDINGS AND**
                                           )    **RECOMMENDATION**
14 MICHAEL J. ASTRUE,                      )
   Commissioner of Social Security,        )
15                                         )
                  Defendant.               )
16                                _____

17 Alan Stuart Graf
   Alan Stuart Graf, PC
18 316 Second Rd.
   Summertown, TN 38483
19
20      Attorney for Plaintiff

   S. Amanda Marshall
21 United States Attorney
   Adrian L. Brown
22 Assistant United States Attorney
   District of Oregon
23 1000 SW Third Avenue, Suite 600
   Portland, OR 97204-2902
24
   Brett E. Eckelberg
25 Special Assistant United States Attorney
   Office of the General Counsel
26 Social Security Administration
   701 Fifth Avenue, Suite 2900, M/S 221A
27 Seattle, WA 98104-7075

28      Attorneys for Defendant

   1 - FINDINGS AND RECOMMENDATIONS

**HUBEL, J.,**

Plaintiff Kathy Jean Hamilton ("Hamilton") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI of the Social Security Act. Hamilton advances one challenge to the Commissioner's decision, that is, whether the Administrative Law Judge ("ALJ") sufficiently followed this Court's mandate on remand. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a careful review of the record, I conclude that the Commissioner's decision should be **AFFIRMED.**

### I.  PROCEDURAL BACKGROUND

Hamilton applied for disability and SSI benefits on August 26, 2005. (Tr. 13.) Both of Hamilton's applications alleged disability beginning July 27, 2005. (Tr. 13.) The applications were denied initially and upon reconsideration on February 6, 2006, and May 15, 2006, respectively. (Tr. 13, 34-42.) Hamilton appeared and testified at a hearing held on April 9, 2008, before ALJ John Madden, Jr. ("ALJ Madden"). (Tr. 24.) The ALJ issued a decision denying Hamilton's claim for benefits on August 11, 2008. (Tr. 24.) Hamilton timely requested review of the ALJ's decision, which was denied by the Appeals Council on August 27, 2008. (Tr. 6.) As a result, the ALJ's decision became the final decision of the Commissioner that is subject to judicial review. (Tr. 6-8.)

Judge Clarke issued a Report and Recommendation on December 31, 2009, in which he recommended that the Commissioner's decision be reversed and remanded for further proceedings. (Tr. 460-70.) On

2 - FINDINGS AND RECOMMENDATIONS

1  February 5, 2010, Judge Panner adopted Judge Clarke's Report and
2  Recommendation and judgment was entered on February 8, 2010. (Tr.
3  471-73.)

4      On April 8, 2010, the Appeals Council issued a remand order,
5  finding Hamilton disabled as of age 55, but requiring further
6  proceedings to assess disability prior to February 6, 2009.[1] (Tr.
7  474-76.)  On October 13, 2010, a second hearing was held before ALJ
8  Madden.  (Tr. 612.)  ALJ Madden issued his written decision on
9  October 27, 2010, finding Hamilton not disabled, as defined in the
10  Act, from July 27, 2005 through February 5, 2009.  (Tr. 459.)
11  Hamilton "did not file exceptions to the ALJ's October 2010
12  decision and the Appeals Council did not otherwise assume
13  jurisdiction, making the ALJ's decision the Commissioner's final
14  decision, which is subject to judicial review." (Def.'s Br. at 6.)
15  On February 23, 2011, Hamilton timely filed the present action
16  challenging the Commissioner's decision.  (Dkt. #1.)

17                    *II.  FACTUAL BACKGROUND*

18      The pertinent facts in this case are largely undisputed.
19  Hamilton was born in 1954 and was 51-54 years old during the
20  relevant time period at issue in this case, *i.e.*, July 27, 2005
21  (the alleged disability onset date) through February 5, 2009 (the
22  day before the Commissioner determined that Hamilton became
23  disabled).  (Tr. 65, 476.)  Hamilton obtained her General
24  Equivalency Diploma ("GED") after dropping out of high school in

25

26      [1]  Hamilton submitted additional applications for disability
    on December 29, 2008, and based on information in the more recent
27  applications, the Appeals Council affirmed the State agency's
    finding that Hamilton became disabled on February 6, 2009. (Tr.
28  475-76.)

3 - FINDINGS AND RECOMMENDATIONS

the 12th grade.  (Tr. 135.)  She is 5' 11" tall and weighs in excess of 300 pounds.  (Tr. 194, 569, 575, 629.)  Hamilton alleges disability based upon a combination of physical and mental impairments, such as disorders of the back (discogenic and degenerative) and affective/mood disorders.  (Tr. 30-31.)

Hamilton saw Allan Kirkendall ("Kirkendall"), Ph.D., for a psychological evaluation on January 17, 2006.  (Tr. 135.) Kirkendall was asked to provide a clinical picture of Hamilton's day-to-day functioning, noting in particular any information pertaining to Hamilton's borderline personality disorder and/or major depressive disorder.  (Tr. 135.)  After conducting a clinical interview and administering a mental status exam, Kirkendall provided the following synopsis:

> Hamilton presented as a depressed individual of average intelligence. **It appears that she is capable of understanding and remembering instructions. She would probably have some difficulty at this point sustaining concentration and attention due to her level of depression.  Her depression appears to be intimately related to her lack of activity.** Ms. Hamilton was successful in her work at a call center over a period of seven years and then quit to help her daughter. **It is unfortunate that this woman has not returned to [her previous] line of work in which she had some success.** While she was persistent in today's interview, it is not clear that she is persistent on a consistent basis when at home. She is capable of engaging in appropriate social interactions although at this point she chooses to stay to herself finding it more comfortable. Her largest area of deficit appears to be her adaptive skills. At this point Ms. Hamilton indicated she feels overwhelmed by life and is having extreme difficulties simply tak[ing] care of her basic needs let alone making any significant changes in her life.

(Tr. 140) (emphasis added).[2]

---

[2]  The fifth and sixth page of Kirkendall's assessment are in the wrong order in the administrative record.  (*See* Tr. 139-40.)

4 - FINDINGS AND RECOMMENDATIONS

On January 30, 2006, non-examining state agency psychiatric consultant Robert Henry ("Henry"), Ph.D., submitted a Mental Residual Functional Capacity Assessment, which described Hamilton as "[m]oderately [l]imited" in three of twenty categories of mental activity and "[n]ot [s]ignificantly [l]imited" in seventeen.  (Tr. 174-76.)  According to Henry,

> **[Hamilton will have] [o]ccasional lapses in concentration due to symptoms of depression.  [She] [c]an carry out simple, routine tasks on an independent basis. . . .** [She has] no problem with public contact via phone but no face-to-face interaction with general public as [it] may raise additional stressors and cause claimant increased symptoms.  Claimant should have occasional additional help with changes in normal work procedures.

(Tr. 176) (emphasis added).

ALJ Madden conducted the first hearing on April 9, 2008, during which he received testimony from Vocational Expert ("VE") Jeffrey Tittlefitz.  (Tr. 376, 425.)  The hypothetical posed to the VE indicated that Hamilton "can carry out simple, routine tasks on an independent basis. [No] face-to-face interaction with the general public. . . . [Hamilton] should have occasional help with changes in normal work procedures."  (Tr. 427, 466.)

In his December 31, 2009 Report and Recommendation, Judge Clarke noted that ALJ Madden's written decision "discussed Dr. Kirkendall's report and **apparently** accepted his opinion regarding [Hamilton]'s limitations as to sustaining concentration and attention."  (Tr. 466) (emphasis added).  Because the hypothetical posed to the VE only limited Hamilton to simple, routine tasks and the ALJ did not explicitly discuss Hamilton's ability to concentrate or pay attention during the hearing, Judge Clarke determined that the hypothetical was deficient because it did not

5 - FINDINGS AND RECOMMENDATIONS

encompass *all* of Hamilton's limitations.  (Tr. 467-69.)  Thus, Judge Clarke recommended the matter "be reversed and remanded so the ALJ and VE could consider the **effect** of Hamilton's limitation in concentration and attention and determine whether jobs exist that she could perform."  (Tr. 469) (emphasis added).

On February 5, 2010, Judge Panner issued an Order, which provided that:

> Magistrate Judge Clarke's Report and Recommendation . . . is adopted.  The decision of the Commissioner is reversed and remanded so that the Administrative Law Judge and the Vocational Exert may consider the effect of Dr. Kirkendall's opinion on [Hamilton]'s probable difficulties in sustaining concentration, attention, and persistence in the determination of whether [Hamilton] is able to perform gainful employment in the national economy.

(Tr. 473.)

Hamilton testified at the second hearing before ALJ Madden on October 13, 2010.  (Tr. 612.)  ALJ Madden noted that "one of the issues addressed in this remand was problems with concentrating and paying attention"; therefore, he inquired as to whether Hamilton had used a computer or "read or anything like that" since the April 2008 hearing.  (Tr. 624.)  Hamilton testified that she had not used a computer since the last hearing, nor has she successfully been able to read because she "lose[s] interest" and can't concentrate.  (Tr. 624.)  Although Hamilton "used to be a reader," she was not able to concentrate longer than five minutes and "wasn't [always] comprehending what [she] was reading."  (Tr. 624.)

Hamilton testified that, since the April 2008 hearing, she sleeps more frequently during the day.  (*See* Tr. 625) (indicating that Hamilton sleeps about three times a day for twenty to sixty minutes).  Hamilton stated that she struggles with many day-to-day

6 - FINDINGS AND RECOMMENDATIONS

1 activities, such as walking in the grocery store without an
2 electric cart. (Tr. 629-30.)  As Hamilton explained, even after
3 walking a block she is "[h]urting." (Tr. 630.)   Hamilton also
4 reported she has difficulty lifting objects due to back pain and
5 that she only showers about once a week. (Tr. 630-31.)  Hamilton
6 attributes her personal hygiene issues to physical pain and
7 depression. (Tr. 631.)

8      The ALJ also received testimony from VE Kay Wise at the
9 October 13, 2010 hearing. (Tr. 633.)  The ALJ began by noting that
10 Hamilton is physically limited to: occasionally lifting fifty
11 pounds and frequently lifting twenty-five; standing, walking, and
12 sitting about six hours in an eight-hour workday; unlimited pushing
13 and pulling; occasionally stooping, kneeling, crouching, and
14 crawling; frequent balancing and climbing; and no manipulative,
15 visual, communicative, or environmental limitations.[3] (Tr. 636-
16 38.)

17      As to Hamilton's non-extertional limitations, the ALJ detailed
18 Henry and Kirkendall's assessments. (Tr. 636.)  Beginning with
19 Henry, the ALJ stated:

20      **[D]ue to occasional lapses in concentration, due to**
         **symptoms of depression, [Henry would limit Hamilton] to**
21      **carrying out simple, routine tasks on an independent**
         **basis.** No problems with public contact via phone, but no
22      face-to-face interaction with the general public, and
         should have occasional additional help with changes in
23      normal work procedures[.]

24

25

26

_____

27      [3] These limitations appear to be taken from Department of
   Disability Services physician J. Scott Pritchard's January 27, 2006
28 Physical Residual Functional Capacity Assessment. (Tr. 148-55.)

7 - FINDINGS AND RECOMMENDATIONS

1  (Tr. 636.)[4]   The ALJ defined "occasional additional help" as
2  needing a "little additional explanation or maybe a little extra
3  supervision." (Tr. 637.)  Taking into consideration Hamilton's age
4  and education, and after ruling out Hamilton's past relevant work,
5  the ALJ asked the VE if there were "other occupations [she] might
6  consider feasible[.]"  (Tr. 638.)  The VE stated that the jobs of
7  hand packager and linen room attendant existed in significant
8  numbers in the national economy.  (Tr. 638-39.)

9        Next, the ALJ set forth the particulars of Kirkendall's
10 report, stating:

> **[L]et me add this in** . . . Dr. Kirkindol [sic]
> found . . . [Hamilton] presented as a depressed
> individual [of average intelligence], . . . [who is]
> capable of understanding and remembering
> instructions. . . . **[Kirkendall] found . . . she would
> probably have some difficulty at this point sustaining
> concentration and attention due to her level of
> depression**[.] . . . He also found that while [Hamilton]
> was persistent in the interview, it was not clear that
> she was persistent on a . . . consistent basis when at
> home. He diagnosed [Hamilton] with adjustment disorder,
> and borderline personality disorder, and assessed a GAF
> of 50, indicating serious symptoms. . . . [According to
> Kirkendall, Hamilton] is capable of engaging in
> appropriate social interactions, although at this point,
> she chooses to stay by . . . herself finding it more
> comfortable. Her largest area of deficit appears to be
> her adaptive skills. . . . At this point, Miss Hamilton
> indicated that she feels overwhelmed by life, and is
> having extreme difficulty simply taking care of her basic

---

23  [4] In the proceeding before Judge Clarke, the Commissioner
24  argued that Kirkendall's findings agreed with those of Henry, who
    concluded in his Mental Residual Functional Capacity Assessment
25  that, "despite '[o]ccasional lapses in concentration due to
    symptoms of depression,' [Hamilton] could still 'carry out simple,
26  routine tasks on an independent basis.'" (Tr. 469.)  As Judge
    Clarke pointed out, that was not the *precise* language used by
27  Henry.  (Tr. 469.)  However, he also noted that this was not
    particularly relevant because "this is not Dr. Kirkendall's
28  opinion," *i.e.*, the physician whose opinion appeared to receive a
    cursory review.  (*See* Tr. 469.)

8 - FINDINGS AND RECOMMENDATIONS

1    needs, let alone making any significant changes in her
     life.
2
(Tr. 639-40) (emphasis added).[5]
3
4        After noting that the VE provided examples of applicable jobs
based on the ALJ's interpretation of the medical evidence, the ALJ
5
provided an alternate interpretation to the VE:
6
7    Q    Okay. So, if I interpret that basically to say
          that, if she has difficulty sustaining attention
          and concentration to the level that she couldn't
8         even do these unskilled occupations.
9    A    Right.
10   Q    [T]hat would -- I mean, that would preclude work?
11   A    Yes, it would.
12   Q    Alright.
13   A    If she wouldn't have consistency as they've
          noted . .. [with respect to] concentration and
14        attention, it would affect all work.
15   Q    Okay.
16   (Tr. 640-41.)[6] ALJ Madden then stated, "I think that is the best
17   I can do with that [counsel]. I'm looking at what the court said
18   and everything. . . . [T]here's nothing really clear from either
19   [Judge Panner's Order or Judge Clarke's Report and Recommendation],
20

21       [5] The ALJ's summarization of Kirkendall's opinion was based
22   on Kirkendall's January 17, 2006 psychological evaluation and Judge
     Clarke's December 31, 2009 Report and Recommendation. (*See* Tr.
23   135, 140, 466, 639-40.)

24       [6] ALJ Madden interpreted the medical evidence to suggest that
     Hamilton should be limited to "simple, repetitive activities." (Tr.
25   640-41.) The VE indicated that a hypothetical individual, who is
     limited to carrying out "simple, routine tasks on an independent
26   basis" could perform the jobs of hand packager and linen room
     attendant. According to the Dictionary of Occupational Titles
27   ("DOT"), these jobs involve performing repetitive work. *Koontz v.
     Astrue*, Civ. No. 08-2153-LAB (WVG), 2010 WL 3339388, at *5 (S.D.
28   Cal. July 26, 2010).

9 - FINDINGS AND RECOMMENDATIONS

1  but . . . somewhere along the line there has to be some
2  interpretation of it." (Tr. 642.)

3      Hamilton's counsel then asked the VE to consider a
4  hypothetical individual, who experienced lapses of concentration
5  five times a week for fifteen minutes in duration, at unpredictable
6  intervals. (Tr. 644-45.) The VE stated that this "would
7  definitely be a problem" because it would impact her productivity,
8  work quality, and ability to adapt to changes. (Tr. 645-46.)

9      Hamilton's counsel inquired whether this hypothetical
10  individual would be allowed to "sleep during the course of a normal
11  shift[.]" (Tr. 646.) The VE stated, "[s]eriously, Counsel, they
12  can't sleep on a job outside of a break or a lunch hour. So, if
13  a . . . supervisor found that . . . [t]here would be a very serious
14  reprimand or a termination." (Tr. 646.) Hamilton's counsel also
15  asked whether this hypothetical individual would be allowed to
16  elevate her legs in any of the jobs indicated, at unpredictable
17  intervals. (Tr. 646.) The VE responded, "[n]ot above the waist-
18  level. . . . [T]hey would be found physically not suited to sustain
19  [employment]." (Tr. 646-47.)

20      After noting that Henry opined that Hamilton had moderate
21  limitations in maintaining attention and concentration, Hamilton's
22  counsel asked the VE to consider a hypothetical individual that
23  suffers moderate limitations four days a week and marked
24  limitations once a week. (Tr. 647-48.) The VE stated, "[m]arked
25  level precludes a productive workday. So, if . . . this is
26  happening one day a week . . . [t]hat would certainly lead to an
27  individual being unable to hold their job." (Tr. 648-49.)
28  Hamilton's counsel then altered the hypothetical, stating, "[w]hat

10 - FINDINGS AND RECOMMENDATIONS

if there was only a 15 or 20 percent reduction in productivity one or two days a week, and the rest of the week the person was able to sustain productivity?  Would that impact her ability to keep . . . the jobs identified?" (Tr. 649.)  The VE stated: "I feel it would, yes because 20 percent reduces it down, and . . . they're losing some valuable hours during the week of productive work."  (Tr. 649.)

### III.   DISABILITY DETERMINATION AND THE BURDEN OF PROOF

#### A.   Legal Standards

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

"Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011) (citing 20 C.F.R. § 404.1520)). The *Keyser* court described the five-step process as follows:

> (1) Is the claimant presently working in a substantially gainful activity?  (2) Is the claimant's impairment severe?  (3) Does the impairment meet or equal one of a list of specific impairments described in the regula-tions?  (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Keyser*, 648 F.3d at 724-25 (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).  The claimant bears the burden of proof for the first four steps in the process.  If the claimant fails to meet the burden at any of those four steps, then the claimant is

11 - FINDINGS AND RECOMMENDATIONS

1  not disabled. *Bustamante v Massanari*, 262 F.3d 949, 953-54 (9th
2  Cir. 2001); *see Bowen v. Yuckert*, 482 U.S. 137, 140-41, 107 S. Ct.
3  2287, 2291, 96 L. Ed. 2d 119 (1987); 20 C.F.R. §§ 404.1520(g) and
4  416.920(g) (setting forth general standards for evaluating
5  disability), 404.1566 and 416.966 (describing "work which exists in
6  the national economy"), and 416.960(c) (discussing how a claimant's
7  vocational background figures into the disability determination).

8       The Commissioner bears the burden of proof at step five of the
9  process, where the Commissioner must show the claimant can perform
10 other work that exists in significant numbers in the national
11 economy, "taking into consideration the claimant's residual
12 functional capacity, age, education, and word experience." *Tackett*
13 *v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner
14 fails meet this burden, then the claimant is disabled, but if the
15 Commissioner proves the claimant is able to perform other work
16 which exists in the national economy, then the claimant is not
17 disabled. *Bustamante*, 262 F.3d at 954 (citing 20 C.F.R.
18 §§ 404.1520(f), 416.920(f)); *Tackett*, 180 F.3d at 1098-99.

19      The ALJ determines the credibility of the medical testimony
20 and also resolves any conflicts in the evidence. *Batson v. Comm'r*
21 *of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (citing
22 *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).
23 Ordinarily, the ALJ must give greater weight to the opinions of
24 treating physicians, but the ALJ may disregard treating physicians'
25 opinions where they are "conclusory, brief, and unsupported by the
26 record as a whole, . . . or by objective medical findings." *Id.*
27 (citing *Matney, supra*; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149
28 (9th Cir. 2001)). "[T]he Commissioner must provide clear and

convincing reasons for rejecting the uncontradicted opinion of an examining physician. . . . [And,] the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) (citations and internal quotation marks omitted).

The ALJ also determines the credibility of the claimant's testimony regarding his or her symptoms:

> In deciding whether to admit a claimant's subjective symptom testimony, the ALJ must engage in a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step prescribed by *Smolen*, . . . the claimant must produce objective medical evidence of underlying "impairment," and must show that the impairment, or a combination of impairments, "could reasonably be expected to produce pain or other symptoms." *Id.* at 1281-82. If this . . . test is satisfied, and if the ALJ's credibility analysis of the claimant's testimony shows no malingering, then the ALJ may reject the claimant's testimony about severity of symptoms [only] with "specific findings stating clear and convincing reasons for doing so." *Id.* at 1284.

*Batson*, 359 F.3d at 1196.

### B. The ALJ's Decision

At the first step of the five-step sequential evaluation process, the ALJ found that Hamilton had not engaged in substantial gainful activity since July 27, 2005, the alleged disability onset date. (Tr. 446.) At the second step, the ALJ found that Hamilton had the following severe impairments: degenerative disc disease of the lumbar spine; degenerative joint disease of the left knee; adjustment disorder; borderline personality disorder; and obesity. (Tr. 446.) At the third step, the ALJ found that Hamilton's combination of impairments were not the equivalent of any of the

13 - FINDINGS AND RECOMMENDATIONS

1  impairments enumerated in 20 C.F.R. § 404, subpt P, app. 1.  (Tr.

2  448.)  The ALJ therefore assessed Hamilton as having the residual

3  functional capacity ("RFC") to

> perform medium work . . . with lifting, carrying, pushing
> and pulling 50 pounds occasionally, 25 pounds frequently,
> standing and walking about six hours of an eight hour
> workday and sitting about six hours of an eight hour
> workday.  She can occasionally stoop, kneel, crouch, and
> crawl and frequently climb and balance. Due to occasional
> lapses in concentration due to depression, the claimant
> is limited to simple, routine tasks on an independent
> basis. She can have contact with the public via telephone
> but is to have no face-to-face interaction with the
> public.  The claimant should have occasional additional
> help with changes in work procedures.

(Tr. 449.)  At the fourth step of the five-step process, the ALJ

found that Hamilton is unable to perform any past relevant work.

(Tr. 457.)  At the fifth step, the ALJ found in light of Hamilton's

age, education, work experience, and RFC that there were jobs

existing in significant numbers in the national and local economy

that she could perform, including a hand packager and linen room

attendant.  (Tr. 458.)  Based on the finding that Hamilton could

perform jobs existing in significant numbers in the national

economy, the ALJ concluded that she was not disabled as defined in

the Act from July 27, 2005, through February 5, 2009.  (Tr. 459.)

### IV.  STANDARD OF REVIEW

The court may set aside a denial of benefits only if the

Commissioner's findings are "'not supported by substantial evidence

or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*,

554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec.

Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *accord Black v. Comm'r*,

433 Fed. Appx. 614, 615 (9th Cir. 2011).  Substantial evidence is

"'more than a mere scintilla but less than a preponderance; it is

1  such relevant evidence as a reasonable mind might accept as
2  adequate to support a conclusion.'" *Id.* (quoting *Andrews v.*
3  *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

4         The court "cannot affirm the Commissioner's decision 'simply
5  by isolating a specific quantum of supporting evidence.'" *Holohan*
6  *v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett*
7  *v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1998)).  Instead, the court
8  must consider the entire record, weighing both the evidence that
9  supports the Commissioner's conclusions, and the evidence that
10 detracts from those conclusions.  *Id.*  However, if the evidence as
11 a whole can support more than one rational interpretation, the
12 ALJ's decision must be upheld; the court may not substitute its
13 judgment for the ALJ's.  *Bray*, 554 F.3d at 1222 (citing *Massachi v.*
14 *Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

15                        *V.  DISCUSSION*

16        The principal issue in this appeal is whether the ALJ failed
17 to comply with this Court's remand order by failing to account for
18 the concentration and attention limitations identified by
19 Kirkendall.  (*See* Pl.'s Opening Br. at 2, 9-10; Def.'s Br. at 2.)
20 Although an ALJ must comply with a district court's remand order,
21 *Sullivan v. Hudson*, 490 U.S. 877, 886, 109 S. Ct. 2248, 104 L. Ed.
22 2d 941 (1989), any alleged failure is subject to harmless error
23 analysis.  *Blanquet v. Astrue*, No. EDCV 10-0181-JEM, 2011 WL
24 283184, at *4 (C.D. Cal. Jan. 24, 2011).

25        Judge Panner's February 5, 2010 Order indicates that the ALJ
26 was to "*consider the effect*" of Kirkendall's opinion on Hamilton's
27 "*probable* difficulties in sustaining concentration, attention, and
28 persistence in the determination of whether [Hamilton] is able to

15 - FINDINGS AND RECOMMENDATIONS

1  perform gainful employment in the national economy."  (Tr. 473)
2  (emphasis added).

3      Hamilton argues that the ALJ improperly reassessed Henry and
4  Kirkendall's opinion on remand.  According to Hamilton, "[n]othing
5  in the Report and Recommendation or the final Court Order
6  authorized the ALJ, on remand, to reassess or reject the opinions
7  of Dr. Kirkendall or Dr. Henry."  (Pl.'s Opening Br. at 10.)
8  Essentially Hamilton argues that the remand order was not properly
9  followed.  I am not persuaded by this argument.

10      In his Report and Recommendation, Judge Clarke stated that ALJ
11  Madden "*apparently* accepted" Kirkendall's opinion regarding
12  Hamilton's limitations as to sustaining concentration and attention
13  based on the following portion of the August 11, 2008 written
14  decision: "The claimant was reported as experiencing some
15  disturbance in her ability to sustain concentration and attention
16  due to her depression; the [RFC] set forth above limits her to
17  simple routine tasks to accommodate her deficits in these areas."
18  (Tr. 466.)  Nowhere within the August 11, 2008 decision, however,
19  does the ALJ indicate the weight he assigned to Kirkendall's
20  assessment. (Tr. 13-24.)  As a result, Judge Panner ordered the
21  ALJ to "consider the effect" of Kirkendall's opinion in arriving at
22  Hamilton's RFC.  It was not clear that this had been done in the
23  2008 hearing and decision.

24      The Commissioner contends that ALJ Madden's compliance with
25  the remand order was sufficient in this case.  In support of his
26  position, the Commissioner directs the court to the Ninth Circuit's
27  decisions in *Thomas v. Barnhart*, 278 F.3d 947 (9th Cir. 2002) and
28  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008).  I agree

16 - FINDINGS AND RECOMMENDATIONS

1  with the Commissioner that *Thomas* and *Stubbs-Danielson* provide
2  meaningful guidance.

3      In *Thomas*, the claimant argued that "the ALJ's hypothetical
4  was inadequate because the ALJ omitted a finding checked on his
5  Psychiatric Review Technique Form ("PRTF") that [the claimant] had
6  deficiencies of concentration, persistence or pace, often resulting
7  in a failure to complete tasks in a timely manner." *Thomas*, 278
8  F.3d at 956. During the claimant's hearing, the ALJ instructed the
9  VE to credit a physician's opinion who, just before the VE's
10 testimony, testified that the claimant had "deficiency to
11 concentration, persistence and pace often." *Id.* Because the VE
12 was present for the physician's testimony and was provided exhibits
13 which included similar findings, the Ninth Circuit held the
14 "hypothetical to the VE . . . adequately incorporated the
15 functional limitations of concentration, persistence and pace." *Id.*

16     In *Stubbs-Danielson*, the ALJ concluded the claimant had the
17 RFC "to perform simple, routine, repetitive sedentary work,
18 requiring no further interaction with the public." *Stubbs-*
19 *Danielson*, 539 F.3d at 1173. The claimant argued that the ALJ's
20 "RFC finding did not capture the deficiency in pace and other
21 mental limitations identified by Dr. Bryce McCollum and Dr. Bruce
22 Eather." *Id.* The Ninth Circuit disagreed. *Id.* McCollum's 2002
23 Intellectual Assessment indicated that the claimant had a "slow
24 pace, both with thinking and her actions" and his 2005 Mental
25 Residual Functional Capacity Assessment ("MRFCA") identified the
26 claimant as "moderately limited" in several mental functioning
27 areas, including the ability "to perform at a consistent pace
28 without an unreasonable number and length of rest periods." *Id.*

17 - FINDINGS AND RECOMMENDATIONS

1   Although McCollum did not assess whether the claimant could perform

2   unskilled work on a sustained basis, Eather did.  *Id.*  Eather's

3   report indicated that the claimant retained the ability to "carry

4   out simple tasks as evidenced by her ability to do housework,

5   shopping, work on hobbies, cooking and reading."  *Id.* As the

6   *Stubbs-Danielson* court recognized,

> [t]he ALJ translated [the claimant]'s condition, including the pace and mental limitations, into the only concrete restrictions available to him- Dr. Eather's recommended restriction to 'simple tasks.' This does not, as [the claimant] contends, constitute a rejection of Dr. McCollum's opinion. Dr. Eather's assessment is consistent with Dr. McCollum's 2005 MRFCA, which found [claimant] is 'not significantly limited' in her ability to 'carry out very short simple instruction,' 'maintain concentration for extended periods,' and 'sustain an ordinary routine without special supervision.'

13  *Id.* at 1174.

14      In so holding, *Stubbs-Danielson* stated, "an ALJ's assessment

15  of a claimant adequately captures restrictions related to

16  concentration, persistence, or pace where the assessment is

17  consistent with restrictions identified in the medical testimony."

18  *Id.* ("where state psychologist both identified claimant as having

19  deficiencies of concentration, persistence or pace and pronounced

20  claimant possessed the ability to 'sustain sufficient concentration

21  and attention to perform at least simple, repetitive, and routine

22  cognitive activity without severe restriction of function,' ALJ's

23  hypothetical including ability to perform 'simple, routine,

24  repetitive tasks' adequately captured claimant's deficiencies in

25  concentration persistence or pace" (citing *Howard v. Massanari*, 255

26  F.3d 577, 582 (8th Cir. 2001))).

27      It is well settled that the hypothetical an ALJ poses to a VE,

28  which derives from the RFC, "must set out all the limitations and

1  restrictions of the particular claimant." *Embrey v. Bowen,* 849
2  F.2d 418, 422 (9th Cir 1988). "While the ALJ may pose to the
3  expert a range of hypothetical questions, based on alternate
4  interpretations of the evidence, substantial evidence must support
5  the hypothetical which ultimately serves as the basis for the ALJ's
6  determination." *Moua v. Astrue*, CIV S-07-2024 GGH, 2009 WL 997104,
7  at *11 (E.D. Cal. Apr. 14, 2009).

8       Upon review, I cannot say ALJ Madden ignored evidence of
9  Hamilton's impairments when he fashioned her RFC because it appears
10 to be consistent with Kirkendall and Henry's reports and seems to
11 adequately capture the tasks Hamilton can do despite her
12 concentration, persistence, or pace restrictions. Likewise, ALJ's
13 Madden's hypothetical, which was derived from the RFC, properly
14 encompasses Hamilton's limitations as the ALJ found them. It is
15 the ALJ's obligation to determine a claimant's RFC (e.g., a summary
16 of what the claimant is capable of doing) and he may incorporate
17 the RFC into the VE hypothetical. *Valentine v. Comm'r Soc. Sec.*
18 *Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). ALJ Madden did exactly
19 that. He considered Kirkendall's and Henry's opinion in
20 formulating the RFC and discussed those opinions with the VE. (*See*
21 Tr. 640-41) (indicating that the ALJ interpreted Kirkendall's
22 report to suggest that Hamilton should be limited to simple,
23 repetitive tasks and noting that the VE provided examples of jobs
24 suitable for an individual with these deficiencies, i.e., the VE's
25 response to the ALJ's hypothetical which was predicated on Henry's
26 report). Although some of the hypotheticals posed could have been
27 more artfully formulated, substantial evidence supports the
28

19 - FINDINGS AND RECOMMENDATIONS

1  hypothetical which ultimately served as the basis for ALJ Madden's
2  decision.

3      *Sabin v. Astrue*, 337 Fed. Appx. 617 (9th Cir. 2009), is
4  instructive here.  In *Sabin*, the ALJ determined the "end result" of
5  the claimant's "moderate difficulties as to concentration,
6  persistence, or pace was that she could do simple and repetitive
7  tasks on a consistent basis." *Id.* at 621.  On appeal, the claimant
8  argued the ALJ found she had moderate difficulties in
9  concentration, persistence, or pace yet failed to account for these
10 in the RFC finding or VE hypothetical. *Id.* at 620.  *Sabin* found
11 this argument unpersuasive. *Id.* at 620 ("holding 'capable of doing
12 simple, repetitive, routine tasks' adequately captured such
13 deficiencies" (quoting *Howard*, 255 F.3d at 582)).[7]  In support of
14 this conclusion, *Sabin* noted, among other things, that the RFC was
15 consistent with several physician's reports and, although the
16 claimant could *not* complete serial 3's, "she could complete serial
17 1's; spell 'world' backwards; follow a three-step command; and do
18 her own cooking, cleaning, laundry, shopping, and bills." *Sabin*,
19 337 Fed. Appx. at 621.

20     Similarly, in this case, as in *Sabin*, the ALJ adequately
21 accounted for Hamilton's limitations in the RFC finding and VE
22 hypothetical.  ALJ Madden determined the end result of Hamilton's
23
24
25
26

27     [7] *Sabin* also distinguished contrary Eight Circuit precedent.
   *See Sabin*, 337 Fed. Appx. at 621 ("holding 'simple jobs' was
28 insufficient to cover concentration, persistence, or pace" (quoting
   *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996))).

concentration and/or attention difficulties was that she could do simple, routine tasks on an independent basis.[8]

The medical evidence supports this conclusion. Kirkendall's 2006 report indicates that, although Hamilton "would *probably* have *some* difficulty at this pointing sustaining concentration and attention due to her level of depression," which appears "intimately related to her lack of activity," she is "capable of understanding and remembering instructions." (Tr. 140) (emphasis added). Kirkendall's 2006 report further provides that Hamilton's "immediate recall and short-term memory appeared to be generally intact," despite complaints of memory problems; Hamilton "completed Serial 3's with one unrecognized math error"; she was able to remember instructions and "spell the word 'WORLD' forwards"; she is "capable of reading the daily paper"; and she "reads at night in order to go to sleep." (Tr. 135, 137.)

Henry's 2006 PRTF indicates Hamilton has "[m]ild" "[d]ifficulties in [m]aintaining [c]oncentration, [p]ersistence, or [p]ace" and his 2006 MRFCA identified Hamilton as "[n]ot [s]ignificantly [l]imited" in several mental functioning areas,

---

[8] Again, the VE indicated that a hypothetical individual, who is limited to carrying out "simple, routine tasks on an independent basis" could perform the jobs of hand packager and linen room attendant. According to the DOT, these jobs involve performing repetitive work. *Koontz*, 2010 WL 3339388, at *5.
The claimant in *Koontz* had "mild difficulties with regard to concentration, persistence and pace." *Id.* at *8. *Koontz* upheld the ALJ's conclusion that the claimant "could perform simple repetitive task such as the tasks required of a hand packager and a linen room attendant," *id.* at *5, and noted that the VE testified that, even if the claimant's symptoms of Tourette's Syndrome were *uncontrolled*, he could still be a hand packager or linen room attendant. *Id.* at *9.

21 - FINDINGS AND RECOMMENDATIONS

1  including the ability to: "remember locations and work-like
2  procedures"; "understand and remember very short and simple
3  instructions"; "understand and remember detailed instructions";
4  "carry out very short and simple instructions"; "carry out detailed
5  instructions"; and "make simple work-related decisions." (Tr. 170,
6  174.)   Although Henry found Hamilton's "ability to maintain
7  attention and concentration for *extended periods*" was "[m]oderately
8  [l]imited," he made clear that Hamilton "[c]an carry out simple,
9  routine tasks on an independent basis."  (Tr. 174, 176.)

10     Moreover, as in *Thomas*, the hypothetical to the VE adequately
11  incorporated Hamilton's limitations in maintaining attention and
12  concentration. *See Thomas*, 278 F.3d at 956 ("holding that an ALJ's
13  hypothetical referring to a limited, unambiguous medical record
14  appropriately included the claimant's limitations" (citing *Torres*
15  *v. Sec'y of Health & Human Servs.*, 870 F.2d 742, 745-46 (1st Cir.
16  1989))).  In formulating the hypothetical which ultimately served
17  as the basis for the October 27, 2010 decision, ALJ Madden detailed
18  Henry's 2006 PRTF which is markedly similar to Kirkendall's 2006
19  report.[9]  Considering Kirkendall did not assess whether Hamilton

20  _____

21     [9] (*Compare* Tr. 176) ("Occasional lapses in concentration due
    to symptoms of depression.  Can carry out simple, routine tasks on
22  an independent basis") (*with* Tr. 140) ("[Hamilton] is capable of
    understanding and remembering instructions.  She would *probably*
23  have *some* difficulty sustaining concentration and attention due to
    her level of depression.")

24

25     By contrast, in formulating the hypothetical which ultimately
    served as the basis for the ALJ's August 11, 2008 decision, ALJ
26  Madden did not explicitly discuss Henry or Kirkendall's opinion,
    nor did he make any specific reference to Hamilton's ability to
27  maintain attention and concentration.  (Tr. 16, 22-23, 425-30.)
    Instead, ALJ Madden and the VE discussed a medical opinion letter
28  (Ex. 17F) completed by family nurse practitioner Eileen Tabert on
    March 26, 2008, and a Physical Residual Functional Capacity

1  could perform "simple, routine tasks on an independent basis," and
2  Henry did, it seems to me that ALJ Madden translated Hamilton's
3  condition into the only concrete restriction available to him. *Cf.*
4  *Stubbs-Danielson*, 539 F.3d at 1174 ("The ALJ translated Stubbs-
5  Danielson's condition, including the pace and mental limitations,
6  into the only concrete restrictions available to him- Dr. Eather's
7  recommended restriction to 'simple tasks.'")

8      The Eight Circuit's oft-cited decision in *Howard* is directly
9  on point. In *Howard*, the ALJ found the claimant "often experienced
10 deficiencies of concentration, persistence or pace" and "asked the
11 [VE] to assume that [the claimant] would be capable of performing
12 simple, routine, repetitive tasks." *Howard*, 255 F.3d at 581. The
13 Eight Circuit determined this was not reversible error. *Id.*
14 Notably, the court relied on a state psychological consultant's
15 findings which concluded that the claimant, despite the
16 aforementioned deficiencies, retained the ability "to perform at
17 least simple, repetitive, and routine cognitive activity without
18 severe restriction of function." *Id.* at 582. The medical evidence
19 provided by Henry in the present case reflects the same conclusion.

20     In short, the ALJ did not fail to comply with this Court's
21 remand order, or alternatively, if he did, the error was harmless.
22 *See Fuller v. Astrue*, Civ. No. 09-1614-PHX-FJM, 2010 WL 4573547, at

23

24 ─────────────────
   Assessment and Physical Summary (Ex. 4F) completed by Department of
25 Disability Services physicians J. Scott Pritchard and Neal Berner
   on January 27, 2006, and May 8, 2006, respectively. (Tr. 3-4, 148-
26 56, 358-59, 425-31.)  The medical evidence provided by Tabert,
   Pritchard, and Berner does not appear to adequately address
27 Hamilton's ability maintain concentration and attention. (Tr. 148-
   56, 358-59.)

28

23 - FINDINGS AND RECOMMENDATIONS

*6 (D. Ariz. Nov. 5, 2010) (indicating that an error is harmless when the correction of that error would not alter the result).

### VI.   CONCLUSION

Following a careful review of the record, I conclude that the Commissioner's decision should be **AFFIRMED**.

### VII.   SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due **July 3, 2012**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due **July 20, 2012**. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this _15th___ day of June, 2012.

/s/ Dennis J. Hubel

_____

DENNIS J. HUBEL
Unites States Magistrate Judge

24 - FINDINGS AND RECOMMENDATIONS